IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PAUL LEITNER and DOMENICA LEITNER,** : | |
| : | |
| : | **CIVIL ACTION** |
| **Plaintiffs,** : | |
| v. : | **NO. 11-7377** |
| : | |
| **ALLSTATE INSURANCE COMPANY** : | |
| : | |
| **Defendant.** : | |
| : | |

**MEMORANDUM**

**TUCKER, C.J.**                                        **July _____, 2014**

Presently before the Court is Defendant Allstate Insurance Company's Motion for Summary Judgment (Doc. 16), Plaintiffs Paul Leitner and Domenica Leitner's Response in Opposition to Defendant's Motion (Doc. 20), Defendant's Reply to Plaintiff's Response to the Motion for Summary Judgment (Doc. 21), and Plaintiffs' Second Response in Opposition (Doc. 22). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED.**

**I.     FACTS AND PROCEDURAL BACKGROUND[1]**

Because the Court writes primarily for the parties, the Court sets forth only those facts that are relevant to its conclusion. On October 1, 2008, Plaintiffs Paul Leitner ("Mr. Leitner") and Domenica Leitner ("Mrs. Leitner") (collectively, "the Leitners") purchased and maintained a homeowner's insurance policy from Defendant Allstate Insurance Company ("Allstate") for their residence at 813 Catharine Street in Philadelphia, Pennsylvania. (Compl. ¶ 7; Answer ¶ 7.) The

---

[1] The facts described herein are undisputed unless otherwise noted. When in dispute, all reasonable inferences will be drawn in the Leitners' favor as the non-moving party.

1

Leitners claim that on or about September 18, 2009, they experienced a loss at their property at 813 Catharine Street when a pipe cracked or burst, causing the accidental discharge of water and resulting damage to their home. (Compl. ¶ 10.) The Allstate homeowner's insurance policy was in full force and effect during this alleged loss on September 18, 2009. (Compl. ¶ 7; Answer ¶ 7.) The Leitners claim that the water damage to their residence at 813 Catharine Street was chiefly located in, but not limited to, the kitchen area, the basement, and the exterior side steps of the property. (Compl. ¶ 11.)

On September 23 or 24, 2009, the Leitners' public adjuster, John Albert ("Mr. Albert"), spoke with an Allstate representative by phone and faxed the Leitners' claim to Allstate. (Compl. ¶ 14; Answer ¶ 14.) Mr. Albert and another Allstate Representative, Peggy Kelly, exchanged communications from September 24 to 25, 2009. (Compl. ¶ 16-17; Answer ¶ 16-17.) On September 25, 2009, Mr. Albert received a telephone call from Allstate Representative Reuben Jackson. (Compl. ¶ 18; Answer ¶ 18.) Mr. Albert also received communication from Allstate Representative Richard Little ("Mr. Little") and had a conversation with Mr. Little on September 25, 2009. (Compl. ¶ 19-20; Answer ¶ 19-20.) Following this conversation, September 28, 2009 was set as the date in which an Allstate representative would inspect the area at the 813 Catharine Street property. (Compl. ¶ 19-20; Answer ¶ 19-20.) Mr. Little inspected the damaged area at the 813 Catharine Street property on September 28, 2009 and shortly after sent a follow-up letter to Mr. Albert, requesting a copy of the invoice from the plumber that the Leitners hired after the loss, the damaged pipe, photographs of the home prior to the loss, photographs of the home during and after the loss, a copy of all plumber and/or contractor contracts and invoices, and a copy of cancelled checks that were issued to the plumber and/or contractor. (Compl. ¶ 21-22, Ex. E; Answer ¶ 21-22.) Mr. Little sent a second request for this information on October 5,

2009. (Compl. ¶ 23, Ex. F; Answer ¶ 23.)  On or about October 15, 2009, an Allstate representative sent the Leitners a letter stating that the investigation of the loss at 813 Catharine Street was still ongoing. (Compl. ¶ 24, Ex. G; Answer ¶ 24.)

The Leitners assert that on October 30, 2009, Mr. Albert forwarded the requested documentation to Mr. Little.  (Compl. ¶ 25, Ex. H.)  Allstate denies this claim. (Answer ¶ 25.) The Leitners also claim that Mr. Albert continued to work with Mr. Little in resolving the matter and that Mr. Albert sent an estimate for the exterior brick work to be done at the 813 Catharine Street property on November 2, 2009. (Compl. ¶ 26-27, Ex. I.)  Allstate denies these claims as well and further asserts that from October 15, 2009 to January 29, 2010, Mr. Albert was unresponsive to Allstate's requests for documents despite a number of attempts to reach him made by Mr. Little. (Answer ¶ 25-27.)  Mr. Albert requested an update on the matter from Mr. Little on December 14, 2009, yet Allstate claims Mr. Little's response to this request went unanswered. (Compl. ¶ 28; Answer ¶ 28.)

Sometime in late January 2010, Allstate received from Mr. Albert receipts and estimates detailing repairs done to correct the damage at the 813 Catharine Street property. (Compl. ¶ 29-30, Ex. J; Answer ¶ 29-30.)  On January 29, 2010, Mr. Little communicated by letter to Mr. Albert that no decision had been made by Allstate as to coverage for the claim. (Compl. ¶ 30; Answer ¶ 30.)  Allstate claims that on January 29, 2010, Mr. Little initially sent this letter with the incorrect date of September 28, 2011 and afterwards, having recognized his mistake, faxed a letter with the correct date of January 29, 2010. (Def.'s Reply to Resp. to Mot. for Summ. J. 6-7, Ex. I, J, and K.)  The Leitners do not directly refute this factual claim, though they do make arguments based on the assumption that a copy of this letter was delivered on or about September 28, 2011. (Pls.' Resp. to Mot. for Summ. J. 4; Pls.' Second Resp. to Mot for Summ. J.

3

9.)  Finally, on February 2, 2010, Mr. Little sent a letter to Mr. Albert stating that Allstate was denying the Leitners' insurance claim. (Compl. ¶ 31, Ex. L; Answer ¶ 31.)

The instant action was commenced by the Leitners in the Court of Common Pleas of Philadelphia County, Pennsylvania on September 16, 2011 and removed to the Eastern District of Pennsylvania on November 30, 2011.  The Leitners bring Pennsylvania state law claims against Allstate for breach of contract, bad faith pursuant to 42 P.S. § 8371, and unfair trade practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, et seq.  After a period of discovery, Allstate submitted the instant Motion for Summary Judgment, which was followed by supporting briefs and documents from both parties. The Court's analysis follows.

## II.    STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney,* 689 F.3d 288, 292 (3d Cir. 2012).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Dee v. Borough of Dunmore,* 549 F.3d 225, 229 (3d Cir. 2008).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986).  Once the moving party has

4

carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.,* 503 F.3d 247, 253 (3d Cir. 2007).  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132 (3d Cir. 2001).  The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g., Love v. Rancocas Hosp.*, 270 F.Supp.2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F.Supp.2d 324, 330 (D.N.J. 2002).

**III.   DISCUSSION**

This Court sits in diversity and therefore must apply state substantive law and federal procedural law. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).  The Leitners are adult individuals residing in the state of Pennsylvania. (Compl. ¶ 1; Answer ¶ 1.)  Allstate is an Illinois state corporation with its principal place of business in Illinois. (Compl. ¶ 2; Answer ¶ 2.)  This case does not involve matters governed by the Federal Constitution or acts of Congress, the alleged action here occurred in Philadelphia, Pennsylvania, and the contract at the center of this dispute is governed

by the laws of the Commonwealth of Pennsylvania. (Compl. ¶ 9, 38-51; Def.'s Reply to Resp. to Mot. for Summ. J., Ex. D at 5-6.)  Pennsylvania state law will therefore govern.

Allstate has filed a Motion for Summary Judgment arguing: (1) the Leitners' breach of contract claim must fail because they failed to file suit within the time limitation provided in their contract and the exceptions to this limitation, namely waiver and estoppel, do not apply here; (2) the Leitners' breach of contract claim should be dismissed because it fails on the merits; (3) the Leitners' bad faith claim fails because Allstate's determination regarding whether the Leitners' homeowners insurance covered the loss was correct; (4) the Leitners' bad faith claim fails because Allstate's determination was at least reasonable; and (5) the Leitners' UTPCPL claim must fail because the Leitners cannot prove any of the elements of common law fraud required under the act.  The Court will address these arguments below.

### A. The Leitners' Claim for Breach of Contract

*The Leitners Breach of Contract Claim is barred for Untimeliness*

Pennsylvania has a four-year statute of limitations that applies to most contract claims. *See* 42 Pa. Cons. Stat. § 5525.  However, absent some statutory prohibition, parties may agree to a shorter time limitation period that applies to claims arising from their contract as long as the limitation is reasonable. *See e.g.*, *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 741-42 (Pa. 1967); *Marshall v. Aetna Cas. & Sur. Co.*, 643 F.2d 151, 152 (3d Cir. 1981); *Atiyeh v. Nat'l Fire Ins. Co. of Harford*, Civil Action No. 07-cv-04798, 2008 WL 4444253, at *4 (E.D.Pa. Sept. 30, 2008); *McElhiney v. Allstate Ins. Co.*, 33 F.Supp.2d 405, 406 (E.D.Pa. 1999).  Courts have held that a one-year time limitation on insurance contracts meets this test. *Kramer v. State Farm Fire and Cas. Ins. Co.*, 603 A.2d 192, 193 (Pa. Super. Ct. 1992) (citing *Lardas*, 231 A.2d at 740) ("It is well settled that a limitation on the time for bringing suit under an insurance contract is a

contractual undertaking between the parties to the contract which is both valid and reasonable."); *Prime Medica Assocs. v. Valley Forge Ins. Co.*, 970 A.2d 1149, 1156 (Pa. Super. Ct. 2009) (collecting cases); *Petraglia v. American Motorists Ins. Co.*, 424 A.2d 1360, 1362 (Pa. Super. Ct 1981) (collecting cases). Additionally, an insurer need not prove prejudice in order to enforce a suit limitation provision. *Prime Medica Assocs.*, 970 A.2d at 1156 (citation omitted).

Even a valid contractual limitation, however, is subject to the defenses of waiver and estoppel. *Id.* at 1156; *Petraglia*, 424 A.2d. at 1362-65. A factual basis must also support a finding of either waiver or estoppel. *Petraglia*, 424 A.2d at 1364. Pennsylvania courts have defined waiver as "a voluntary and intentional abandonment or relinquishment of a known right" that may be established by "a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Samuel J. Marranca General Contracting Co., Inc. v. Amerimar Cherry Hill Assocs. Ltd. P'ship*, 610 A.2d 499, 501 (Pa. Super. Ct. 1992) (citation omitted); *Prime Medica Assocs.*, 970 A.2d at 1156. Additionally, equitable estoppel is defined as:

> a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Prime Medica Assocs.*, 970 A.2d at 1157 (citing *Kreutzer v. Monterey Cnty. Herald Co.*, 747 A.2d 358, 361 (Pa. 2000)). Estoppel requires the presence of two elements: (1) inducement to act; and (2) justifiable reliance on that inducement. *See, e.g.*, *Kreutzer*, 747 A.2d at 362; *Havas v. Temple University of the Commonwealth System of Higher Educ.*, 516 A.2d 17, 18 (Pa. Super. Ct. 1986). "The burden rests upon the party asserting estoppel to establish the elements thereof by evidence which is clear, precise, and unequivocal . . . mere silence or inaction is not a ground

for estoppel unless there is a duty to speak or act." *Farmers Trust Co. v. Bomberger*, 523 A.2d 790, 793-94 (Pa. Super. Ct. 1987) (citations omitted); *Prime Medica Assocs.*, 970 A.2d at 1157 (citations omitted).

Here, the Allstate homeowner's insurance policy that the Leitners agreed to states:

**Action Against Us**

No one may bring an action against us in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:

a) there has been full compliance with all policy terms; and

b) the action is commenced within one year after the inception of loss or damage.

(Def.'s Reply to Resp. to Mot. for Summ. J., Ex. D at 20.)  According to these terms, the Leitners' suit is vulnerable to dismissal.  The Leitners claim that the loss occurred on Sept. 18, 2009 (Compl. ¶ 10) yet they did not initiate their original action in the Philadelphia Court of Common Pleas until September 16, 2011, well outside of the time frame to file suit agreed upon by the parties. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. A.)  The Leitners do not dispute the plain language meaning of the contract clause, but instead argue that the noted wording is "boiler plate language [that] cannot be removed from the contract by a party in the same position as Plaintiffs." (Pls.' Resp. to Mot. for Summ. J. 3; Pls.' Second Resp. to Mot for Summ. J. 6-7.) They further assert that the clause is not of a type which could be negotiated by a lay person and that it would be against public policy for them to be barred from bringing their claim based on breach of contract.  Without citation to any case law, the Leitners support their position by stating that "[o]ther jurisdictions, such as New Jersey, have ruled that insurance contracts by nature are contracts of adhesion and make sure the insurance policies conform with public policy and principles of fairness." (Pls.' Resp. to Mot. for Summ. J. 3; Pls.' Second Resp. to Mot for

Summ. J. 7.) In effect, the Leitners are claiming that the Allstate contract they signed in 2008 is unconscionable due to the limitation clause. This argument finds no support among Pennsylvania state case law. As noted above, reasonable limitations on insurance contracts are valid in Pennsylvania unless there is a waiver on the part of the party holding the right or estoppel due to the insured's reliance on some inducement by the insurer.

The Leitners also make arguments based on both waiver and equitable estoppel; however, both of those arguments fail. With respect to the issue of waiver, the Leitners argue that "[p]laintiffs never had knowledge of the right they allegedly waived and as such were unable to surrender that right." (Pls.' Resp. to Mot. for Summ. J. 2; Pls.' Second Resp. to Mot for Summ. J. 6.) The Leitners' argument is mistaken. The Leitners possess no right to file suit outside of the contract limitation period but Allstate has the right to bar untimely suits. It is not the Leitners' right to waive. *See, e.g.*, *Lardas*, 231 A.2d at 742 (finding that an insurance company did not waive the contractual requirement that commencement of a cause of action be within twelve months of loss); *Prime Medica*, 970 A.2d at 1157 (collecting cases and stating with regard to waiver that "[t]he insured must present evidence establishing reasonable grounds for believing that the time limit would be extended or that the insurer would not strictly enforce the suit limitation provision"); *Swan Caterers, Inc. v. Nationwide Mut. Fire Ins. Co.*, Civil Action No. 12-cv-00024, 2012 WL 5508371, at *4-5 (E.D.Pa. Nov. 13, 2012) (collecting cases). Here, the Leitners have failed to present any evidence stating or suggesting that Allstate waived the one-year cause of action limitation found in their homeowner's insurance contract. (Def.'s Reply to Resp. to Mot. for Summ. J. 15.) As a result of this failure, the Leitners cannot successfully avoid the one-year cause of action limitation by claiming Allstate waived its right to bar the action.

The Leitners' estoppel defense proceeds by claiming that the Leitners, through Mr. Albert, received a letter from Mr. Little dated September 28, 2011. (Pls.' Resp. to Mot. for Summ. J. 4; Pls.' Second Resp. to Mot for Summ. J. 9; Def.'s Reply to Resp. to Mot. for Summ. J., Ex. I, J, and K.) The Leitners claim that "by sending a letter to Plaintiffs' dated September 28, 2011, Defendant acknowledged that Plaintiffs' claim was still open and no decision had been made. As such, Plaintiffs were led to believe their claim was still under consideration two years after the loss. Defendant's Motion should therefore be denied." (Pls.' Resp. to Mot. for Summ. J. 4; Pls.' Second Resp. to Mot for Summ. J. 9.) The Leitners' argument fails here for a number of reasons. First, the Leitners do not actually claim they received the letter on or about September 28, 2011 but simply state that the letter displays that date. They put forward no evidence, such as a postal stamp or receipt, supporting the assertion that the letter was actually received in 2011 rather than in 2010. Second, the contents of the letter address issues alive in January of 2010 but already decided by September of 2011. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. I.) The letter confirms the receipt of documents from January 21, 2010, comments on Mr. Little's difficulty in reaching Mr. Albert, and finally notes "[a]lthough your letter assumes coverage has been afforded to this loss, at no time as (sic) anyone accepted or denied coverage pertaining to this loss as the facts and documentation have only now been received." (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. I.) Meanwhile, it is undisputed that Allstate denied the Leitners' claim in February of 2010. (Compl. ¶ 31; Answer ¶ 31.) Therefore, even if the Leitners received this letter in 2011, its contents would clearly indicate that its delivery was a mistake. Third, Mr. Little provides a sworn declaration stating that he was not employed by Allstate on September 28, 2011 and had ceased working for the company in 2010. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. K.) Fourth, there is no way that a letter from Allstate on

10

September 28, 2011 could have induced the Leitners to postpone filing suit against Allstate until after the one-year cause of action period because the Leitners initiated the instant action twelve days prior, on September 16, 2011. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. A.)

Mr. Leitner has also testified that he was specifically told by an Allstate representative soon after his claim was denied that the best course of action at that time was to sue Allstate and that his own public adjuster, Mr. Albert, "probably" told him that it was necessary to file suit within one year of the loss.[2] (P. Leitner Dep. 69:2-70:14, 83:17-85:2.) The burden rests with the

---

[2] Mr. Leitner's testimony reads as follows:

**Q: I'm going to ask you, did you have a telephone conversation with someone or do you remember a telephone conversation with someone from Allstate named Pat Concannon, a supervisor?**

P. Leitner: Yes.

**Q: The date, according to the Allstate records, that that conversation would have happened was March 10th, 2010. Does that sound approximately correct to you?**

P. Leitner: I don't remember the date.

**Q: Let me read what Mr. Concannon wrote and see if it refreshes your recollection.**

P. Leitner: Okay.

**Q: Quote, I told the insured to have the public adjuster contact me and we would set up a four-way call to discuss the claim file. If the public adjuster is agreeable; otherwise, I advised the insured he has one year from the date of loss to file suit for this denial of coverage.**

**Do you recall that conversation?**

P. Leitner: I recall him telling me that my best course of action was to sue Allstate. I remember being flabbergasted by that and telling him I had no interest in that and I just wanted to have this remedied. I recall setting up a conference call, necessarily. But I do recall him mentioning – I don't recall him mentioning you have a year or anything. I just remember him saying that he believed the best course of action was to file suit against Allstate.
. . .

**Q: Is it fair to say that you don't recall any other interactions with Allstate besides those we've already discussed?**

P. Leitner: Yes.

**Q: Did Mr. Albert ever advise you that you had to file suit within a year of the date of the loss if you were going to file suit?**

P. Leitner: Probably.

Leitners to establish by "clear, precise, and unequivocal" evidence that they were induced to act because of statements or actions of Allstate and that they justifiably relied on that inducement. *See Farmers Trust Co.*, 523 A.2d at 793-94 (citations omitted); *Prime Medica Assocs.*, 970 A.2d at 1157 (citations omitted).  The Leitners here have failed to present sufficiently clear evidence supporting either inducement or justifiable reliance on that inducement.  Because of this, the estoppel exception is also unavailable to the Leitners and their entire breach of contract claim is barred by the one-year cause of action limitation in their homeowner's insurance contract.  As this claim is barred for untimeliness, this Court need not address the merits of the Leitners' action.

### B. The Leitners' Claim for Bad Faith

*Allstate's Determination was at Least Reasonable*

The Leitners base their bad faith claim on the assertion that Allstate denied their claim and/or unreasonably delayed its investigation of the Leitners' claim and/or conducted an improper investigation into the September 18, 2009 loss experienced by the Leitners. (Compl. 46.)  Pennsylvania's bad faith insurance statute provides:

---

**Q: When did he do that or when would he have done that?**

P. Leitner: I don't know. If I had to guess it probably would have been after I had the conversation with the supervisor and he advised me to file suit. I don't recall a specific conversation, but knowing myself, I'm pretty sure I would have had a conversation with Mr. Albert saying, the supervisor is telling me to sue them, what's that about or something like that.

**Q: Do you remember that conversation?**

A: No. I don't recall.

**Q: But it is fair to say, then, that you knew six months or nine months after the loss that if you were going to sue Allstate you had to do it within a year of the loss?**

P. Leitner: I would say it was probably fair to say either myself or Mr. Albert knew -- I would hope he would know if that's policy, but I don't recall.

(P. Leitner Dep. 69:2-70:14, 83:22-85:2.)

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371. The standard for bad faith claims under § 8371 requires: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis. *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233-34 (3d Cir. 1997); *Warnstorff v. State Farm Auto. Ins. Co.*, Civil Action No. 3:14-0077, 2014 WL 2808604, at *2-3 (M.D.Pa. June 19, 2014). Pennsylvania courts also require that both of these elements be supported by "clear and convincing evidence." *Terletsky*, 649 A.2d at 688 (citations omitted); *Klinger*, 115 F.3d at 233; *Warnstorff*, 2014 WL 2808602, at *2-3. Such a standard places a high bar on the plaintiff. The evidence must be "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penny Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (citation omitted); *Warnstorff*, 2014 WL 2808602, at *2-3.

The evidence put forward here by the Leitners is insufficient to pass the high bar established by the Pennsylvania courts. They have failed to establish, by any standard, the lack of a reasonable basis for the denial of benefits and do not put forward any argument or evidence focusing on any reckless disregard on Allstate's part. The Leitners' homeowner's insurance policy states:

**Losses We Cover Under Coverages A and B:**

We will cover sudden and accidental direct physical loss to property described in Coverage A – Dwelling Protection and Coverage B – Other Structures Protection except as limited or excluded in this policy.
. . .

**Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C**

A. We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B –Other Structures Protection consisting of or caused by the following . . . Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel . . .from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or . . . from within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.
. . .

C. We do not cover loss to the property described in Coverage A—Dwelling Protection, Coverage B –Other Structures Protection or Coverage C—Personal Property Protection consisting of or caused by the following . . . Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(Def.'s Reply to Resp. to Mot. for Summ. J., Ex. D at 7, 13-15.)  The Leitners do not contest this language or Allstate's interpretation of it in any of their briefings.  Rather, they merely assert, without any supporting arguments or evidence, that Allstate's actions in denying their claim was neither correct nor reasonable. (Pls.' Resp. to Mot. for Summ. J. 3-4; Pls.' Second Resp. to Mot for Summ. J. 8-9.)  Allstate contends that the policy language stated here is clear: they only cover "*sudden* and accidental direct physical losses," they do not cover "seepage or leakage over a period of *weeks*, months, or years . . . ," and they do not cover loss consisting of or caused by ". . . *water or any other substance* on or below the surface of the ground, regardless of its source. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. D at 7, 13-15.) (emphasis added.)

The parties agree that Mr. Little inspected the damaged area at the 813 Catharine Street property on September 28, 2009 and soon sent a follow-up letter to Mr. Albert, requesting further documentation. (Compl. ¶ 21-22, Ex. E; Answer ¶ 21-22.) After receiving the requested documentation, Allstate sent a letter to the Leitners rejecting their claim, stating:

> [W]e were unable to provide coverage for water damage to your dwelling. Please refer to Section I, Coverage A, Dwelling Protection, paragraph Losses We Cover Under Coverage A & B of your . . . Primary Homeowners policy. It states: We will cover sudden and accidental direct physical loss to property described in Coverage A Dwelling Protection and Coverage B Other Structures Protection except as limited or excluded in this policy.

(Def.'s Reply to Resp. to Mot. for Summ. J., Ex. L.) The letter goes on to mention the contract provision barring the coverage of "seepage or leakage over a period of weeks, months, or years, of water, steam or fuel . . . ." (*Id.*)

Both Mr. Leitner and the Leitners' plumber, Michael Makara ("Mr. Makara"), testify that soon after the loss on September 18, 2009, Mr. Makara was called to assess the situation. (P. Leitner Dep. 34:9-43:8; Makara Dep. 8:23-10:22.) Mr. Makara testifies to two interrelated problems: (1) a plastic pipe carrying waste from an upstairs bathroom and running underneath the kitchen floor of the property, became disconnected due to bad workmanship, and allowed waste to pour into the floor beneath the kitchen; and (2) another pipe made of terra cotta running underground just outside the property broke due to age and caused water to accumulate on the basement floor of the property. (Makara Dep. 16:19-22:8, 25:14-25:23.) With regard to both problems, Mr. Makara states that he could not tell from the condition of the piping how long the problems had existed but he did state that based mainly on the amount of accumulated waste and other debris that the piping underneath the kitchen had been leaking for "approximately more than a month" and that the outside piping had been leaking for "more than two weeks, definitely"

and probably more than a month.[3] (Makara Dep. 23:5-25:3.) Upon being reminded that three people lived in the property rather than two and that this reality would change the amount of waste and debris that the pipes could deposit in a short amount of time, Mr. Makara stated that this would not alter his estimate that both of the problems had been in existence for at least a number of weeks. (Makara Dep. 59:9-18.) The Leitners offer no evidence refuting this

---

[3] More specifically, Mr. Makara's testimony reads as follows:

**Q: Now, can you tell by looking at the piping whether or not it's piping that leaked once or whether or not this was something that had probably (sic) going on for a period of time?**

Makara: Terra cotta you can't, but cast iron you can because it develops rust around it if it's leaking. PVC is the same thing. You'll have a discoloration around the piping. But terra cotta –

**Q: There's no way to tell?**

Makara: There's no way to tell.

**Q: Okay. So then, with respect to the piping that was underneath the kitchen, can you tell by looking at the pipe whether or not it leaked once or multiple times?**

Makara: You couldn't tell – it was new piping that was put in, but you couldn't tell how – you know it was leaking because there was just – you know, there was toilet paper and all sorts of everything all over the place.

**Q: Okay. Let me ask it this way: Based on what you saw, the piping underneath the kitchen – would that have been leaking for more than a week or more than a month or less than a week?**

Makara: I would say approximately more than a month.

**Q: More than a month. Okay.**

Makara: There was just – there was a lot.

**Q: And I know you said it's difficult to tell because it's terra cotta, but the piping outside, based on what you could see, do you think that was leaking for more than a month or less than a month?**

Makara: That probably was leaking for a while because, I mean, as soon as you would run water, it was coming right in. So, it was – that had to be broke for a while. Had to have been.

**Q: At least two weeks?**

Makara: Yeah. More than two weeks, definitely.

**Q: Okay. Probably more than a month?**

Makara: Yes.

(Makara Dep. 23:5-25:3.)

testimony or calling it into question. Allstate clearly articulated why it did not cover the Leitners' loss: given its inspection of the damage and other information received, it found, among other things, that both the disconnected plastic pipe and the broken terra cotta pipe had been leaking for at least a number of weeks. (Def.'s Reply to Resp. to Mot. for Summ. J., Ex. L.) Such a loss is specifically excluded from coverage under the written terms of Allstate's homeowner's insurance policy mentioned above. As a result, Allstate's determination cannot be seen as lacking a reasonable basis and the Leitners' bad faith claim is dismissed.

### C. The Leitners' Claim for Unfair Trade Practices

*The Leitners have Failed to State a Claim under the Unfair Trade Practices and Consumer Protection Law*

The Leitners allege that Allstate's refusal to pay what the Leitners see as reasonable expenses and benefits arising out of their claim constitutes "unfair and deceptive practices that create a likelihood of confusion or misunderstanding on the part of the Plaintiffs and other insureds." (Compl. ¶ 48-49.) The Supreme Court of Pennsylvania has held that in order to maintain a private right of action under UTPCPL, a plaintiff must show justifiable reliance and causation. *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004) ("To bring a private cause of action under the [Unfair Trade Practices and Consumer Protection Law], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."); *Toy v. Metropolitan Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007) ("In summary, this Court concludes that . . . [our] decision in *Weinberg* . . . stands for the proposition that . . . a plaintiff alleging violations of the Consumer Protection Law must prove the common law fraud element of justifiable reliance . . . ."). Additionally, the Third Circuit has "interpreted the justifiable-reliance standing requirement to apply to *all* substantive subsections of the Consumer

17

Protection Law, fraud-based or not." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) (emphasis in original); *see also Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) ("The Supreme Court of Pennsylvania has held that a plaintiff bringing an action under the UTPCPL must prove the common law fraud elements of reliance and causation with respect to all subsections of the UTPCPL.")

Here, the Leitners do not make an argument based on any justifiable reliance and do not put forward any evidence at all that they relied upon some statement or representation from Allstate guaranteeing that their claim would be approved or even suggesting their claim would be approved. The Leitners argue that the general purpose of the UTPCPL is "to protect the public from fraud and unfair or deceptive business practices." (Pls.' Second Resp. to Mot for Summ. J. 9.) The Leitners also argue that the statute is to be "liberally construed to prevent unfair or deceptive purposes." (Pls.' Second Resp. to Mot for Summ. J. 9.) The Leitners fail, however, to describe how Allstate's actions in this instance warrant consideration under the statute at all, and put forward no evidence establishing the reliance and causation elements demanded by Pennsylvania state law. In such an instance, a liberal construction of the statute cannot aid the Leitners' cause. Because of this failure, the Leitners cannot establish their claim under the UTPCPL, and their claim for unfair and deceptive practices will be dismissed.

## IV.     CONCLUSION

For the foregoing reasons, Defendant Allstate's Motion for Summary Judgment will be granted. An appropriate order follows.